UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CARRIE M. PATTON,**
    **Plaintiff,**

v.                                                         **CASE NO. 2:06-CV-595-FtM-29DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**
    **Defendant.**
_____/

**OPINION AND ORDER**[1]

On January 18, 2001, Plaintiff filed her current application for disabled widow's insurance benefits[2]. [Tr. 50-52]. This application was denied on January 13, 2004, by the Administrative Law Judge ("ALJ"). [Tr. 336-42]. On May 7, 2004, the Appeals Council granted the Plaintiff's Request for Review, vacated the ALJ's decision and remanded the case to the ALJ for further consideration. [Tr. 350-53]. On October 19, 2005, Administrative Law Judge A. F. Ayers issued a new decision finding the Plaintiff was not disabled. [Tr. 17-25]. The Appeals Council denied the Plaintiff's Request for Review [Tr. 7-9], making the ALJ's decision the final decision of the

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the cases has been referred to the undersigned by an Order of Reference dated January 30, 2007.

[2] The regulations provide that a widow or widower may be entitled to benefits if the wage earner was insured at the time of death, the parties had a valid marriage, and the claimant became disabled within seven years of the wage earner's death. *See generally*, 20 C.F.R. 404.335 (1997). Plaintiff was married on July 6, 1984 to wage earner Dale Patton. Plaintiff's prescribed period begins December 26, 2000 and ends in December 2007.

Commissioner. The Plaintiff has exhausted her administrative remedies and has filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr."] followed by the appropriate page number) and the parties have filed legal memoranda. For the reasons set forth below, the Court finds the Commissioner's decision is due to be **REVERSED** and this matter is **REMANDED** to the Commissioner for determination of the payments allowable by statute and regulation.

I.  SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION
    AND STANDARD OF REVIEW

The plaintiff is entitled to disability benefits[3] when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The first Administrative Hearing was held on October 17, 2003. [Tr. 473-498]. The ALJ denied her claim on January 13, 2004, after determining the Plaintiff suffered from severe bipolar disorder in remission and GERD during the relevant prescribed period between December 26,

---

[3] The definition for disability for widow's benefits is the same as for the standard disability case and the five step sequential evaluation process is applicable to widow's cases. 20 C.F.R. 404.1505(a)(1997).

2000 and December 2007. [Tr. 341]. The ALJ determined the Plaintiff retained the residual functional capacity ("RFC") to perform physical work at all exertional levels, but is limited to simple, repetitive tasks; working in a low stress environment and occasional interaction with co-workers, supervisors and the general public. {Tr. 25]. Thus, the Plaintiff was found to be not disabled based on Medical-Vocational Rule 203.21, Appendix 2, Subpart P, Regulations No. 4. [Tr. 341]. The ALJ further relied on the testimony of the vocational expert (VE) at the hearing to establish the existence of a significant number of jobs in the national economy which the Plaintiff could perform, given her condition. [Tr. 23-24].

On May 31, 2005, a second administrative hearing was held in Ft. Myers, Florida. [Tr. 499-521]. In the second decision, ALJ Ayer determined the Plaintiff suffered from an affective disorder diagnosed as major depression and/or schizophrenia, and personality disorder. The ALJ found the Plaintiff to have mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace and, no episodes of decompensation of extended duration. (20 C.F.R. § 404.1520(c)). [Tr. 24]. The ALJ found the Plaintiff's allegations regarding her limitations, and the reports of her friends, not totally credible and that the Plaintiff retains the residual functional capacity ("RFC") to perform a full range of physical work activity up to and including heavy work. The ALJ made this determination by applying Medical-Vocational Rule 204.00 for her decision and by considering the testimony of the vocational expert, that there were a significant number of jobs in the national economy that the Plaintiff could perform. [Tr. 9].

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II. REVIEW OF THE FACTS

The Plaintiff was married on July 6, 1984 to wage earner Dale Patton, who was fully insured when he died on December 26, 2000. The Plaintiff attained the age of 50 on April 18, 2001, the year after her husband died. The Plaintiff is unmarried and has a high school education and no past relevant work experience. [Tr. 7-9, 25, 50, 61, 84]. The Plaintiff completed tenth grade and then attended night school and obtained her diploma. [Tr. 61]. The Plaintiff alleged onset of disability beginning on January 1, 1984. The Plaintiff alleged migraines, nervous breakdown, schizophrenia, manic depression, thyroid and high blood pressure." [Tr. 51, 55].

4

The record shows that the Plaintiff has a history of treatment for mental illness. The Plaintiff was placed in the hospital in December of 1970. At that time, she was diagnosed with schizophrenic reaction and was given a total of four shock treatments. The Plaintiff had become psychotic and was hallucinating. [Tr. 109-122). When the Plaintiff was discharged she was prescribed Thorzine and Artane. [Tr. 109].

The Plaintiff overdosed on Elavil in July of 1984 and was admitted to DeSoto Memorial Hospital. [Tr. 144]. The Plaintiff was later transferred to Sarasota Memorial Hospital and was hospitalized for a month for treatment of depression. [Tr. 144-45). The Plaintiff was diagnosed with depression and schizophrenia. The record shows the Plaintiff was prescribed Haldol and Cogentin upon release. (Tr. 144-145).

The Plaintiff began treatment with Jarret Black, psychiatrist, M.D., on July 18, 1984. The Plaintiff showed symptoms of insomnia and not being able to cope with stress. [Tr. 236-237]. The Plaintiff was diagnosed with dysthmic disorder/dependent personality and was referred for individual counseling. [237]. Dr. Black prescribed Lithium Carbonate (which assists in the treatment of bipolar disorder]. The Plaintiff was treated by Dr. Black for over twenty years for her bipolar disorder. The Plaintiff was stabilized with medication until her husband's unexpected death on December 26, 2000. [Tr. 203]. The Plaintiff continued to frequently see Dr. Black for complaints of depression and insomnia. On January 30, 2001, the Plaintiff reported anxiety and irritability and was prescribed Klonopin. [Tr. 203-4].

The Plaintiff was seen by her primary care physician, Calvin Martin, M.D. on April 2, 2001. The Plaintiff reported, "sudden episodes of severe uncontrollable anger". The Plaintiff advised that these episodes were more frequent and were lasting longer than in the past. The Plaintiff was

markedly depressed and she was prescribed 20 mg. of Paxil per day. [Tr. 255]. At the office visit on April 16, 2001, the Plaintiff reported "a crawling sensation and itching in her skin". Dr. Martin determined that the Plaintiff was suffering from anxiety. [Tr. 254]. The Plaintiff continued with her medications for depression and bipolar disorder prescribed by her treating physician, Dr. Martin, through 2002. [Tr. 251-275].

The Plaintiff was seen by Henry Tenenbaum, Ph.D. for a psychological evaluation on October 3, 2001. The Plaintiff reported she is severely depressed and unable to work, as "she becomes easily overwhelmed". [Tr. 310] The Plaintiff was markedly depressed with a flat affect. [Tr. 311]. "DSM IV Diagnosis: Ms. Patton may be a good candidate for the Division of Vocational Rehabilitation. Axis I: Major Depressive Disorder, Recurrent; Axis II: Rule out personality disorder; Axis III: Medical by Claimant Report: HBP, Menopause, Hypothyroid; Axis IV: Psychosocial Stressors; Recent widow, financial problems, lack of vocational skills; Axis V. Global Assessment of Functioning: (GAF) Level over past 12 months 50. The Plaintiff was found to be capable of managing her own funds

On March 15, 2001, James Mendelson, Ph.D., completed a Psychiatric Review Technique form on behalf of the SSA. The Plaintiff was diagnosed with Bipolar Affective disorder in remission[4], with moderate difficulties maintaining concentration, persistence or pace. [Tr. 280, 287]. Dr. Mendelson also completed a Mental Residual Functional Capacity Assessment and

---

[4] Although hypomanic behavior was observed and the mental status examination disclosed an acute affective episode in which the Plaintiff exhibited inappropriate affect, pressured speech and loose associations, (with thought processes disorganized and confused), Dr. Mendelson determined that since the Plaintiff had participated in treatment and was presently on her medications she was in remission.

found the Plaintiff to be "moderately limited" in her ability to: "1. Maintain attention and concentration for extended periods; and 2. Complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without numerous rest periods. [Tr. 291-292].

On January 6, 2002, the Plaintiff was seen by State Agency reviewing psychologist, Don R. Briggs, Ph.D. Dr. Briggs completed a Psychiatric Review Technique form and his diagnoses included: Major Depressive Disorder, recurrent, with disturbance of mood; accompanied by a full or partial manic or depressive syndrome, as evidence by sleep disturbance; decreased energy, feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of suicide. [Tr. 316]. Dr. Briggs found evidence of a Personality Disorder, with inflexible and maladaptive personality traits which cause impairment in social or occupational functioning or subjective distress. [Tr. 320]. Dr. Briggs also completed a Mental Residual Functional Capacity Assessment which found the Plaintiff was "moderately limited" in her ability to: 1. Maintain attention and concentration for extended periods; 2. Perform activities within a schedule, maintain regular attendance and be punctual; 3. Complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace with numerous amounts of reset periods; and 4. Accept instructions and respond appropriately to criticism from supervisors. [Tr. 329-330].

On January 8, 2003, the Plaintiff was seen by Dr. Black. The Plaintiff complained of migraine headaches that had gotten progressively worse. [Tr. 400]. The Plaintiff reported excessive drowsiness, even though there was a slight decrease made to her medication, Klonopin on April 2003. [Tr. 398]. On October 15, 2003, the Plaintiff reported being aggressive, short-tempered and verbally abusive. The Plaintiff still complained of continued headaches. Dr. Black discontinued the

Klonopin and prescribed a trial course of Buspar for anxiety. [Tr. 440]. On October 29, 2003, Dr. Black placed the Plaintiff back on Klonopin due to the poor results she had on Buspar and the continued headaches and her problems with anger. [Tr. 438]. On December 1, 2004, Dr. Black discontinued the Lithium because of possible renal dysfunction and in January of 2005 the Plaintiff was prescribed Depakote to ward off any psychotic mood swings. [Tr. 414-421].

**III.    SPECIFIC ISSUES AND CONCLUSIONS OF LAW**

    **A.    THE ALJ ERRED IN EVALUATING THE SEVERITY OF THE PLAINTIFF'S MENTAL IMPAIRMENTS**

The Plaintiff contends that following the second hearing, the ALJ found the Plaintiff retained the residual functional capacity to perform the exertional demands of the full range of heavy work. [Tr. 25]. The Plaintiff argues that because of her severe mental impairments, Plaintiff was restricted to the performance of work involving simple, repetitive tasks; occasional interaction with co-workers, supervisors and the general public and work in a low stress environment. [Tr. 25].

The Plaintiff also argues the ALJ failed to impose any restrictions on her ability to complete a normal workday and work week or even to maintain regular attendance. [Tr. 25]. Thus the severity of the Plaintiff's mental impairments precluded exclusive reliance on the Grids and vocational expert testimony was required.

Once the claimant establishes the inability to perform past relevant work, the burden of proof shifts to the Commissioner to provide that the claimant is capable of engaging in other kinds of substantial gainful employment, considering her age, education, and past relevant work experience. *Cannon v. Bowen* 858 F.2d 1541, 1544 (11th Cir. 1988) Where it is shown the claimant can perform unlimited types of work, the "Grids" apply and may be used to show that a claimant can perform work which exists in the national economy. *Allen v. Sullivan* 880 F.2d 1200, 1202 (11th Cir. 1989).

It is inappropriate to rely exclusively on the Grids when the claimant cannot perform a full range of work at a given level on a sustained basis, or when the claimant has non-exertional impairments which significantly restrict her ability to perform basic work activities. *Foote v. Chater* 67 F.3d 1553 (11th Cir. 1995). Where the Grids are inapplicable, the Commissioner must seek expert vocational testimony. *MacGregor v. Bowen, 786 F.2d 1050, 1054* (11th Cir. 1986).

At the second hearing, a vocational expert was called to testify and identified five unskilled jobs in the DOT that the Plaintiff could perform based upon the ALJ's restrictions. Those jobs were as follows: small products assembler, machine tender, plastic hospital products, surgical instruments inspector and garment sorter. The vocational expert testified that these "... are all light and at the SVP of 2". [Tr. 519]. According to the DOT, the jobs identified by the VE required reasoning at a level "2"[5].

Reasoning level "1" jobs can be performed by an individual who ca understand and carry out "simple one- or two-step instructions." Reasoning level "2" jobs can be performed by an individual who can understand and carry out "detailed but uninvolved written or oral instructions." DOT, Vol. 11, 4th Ed., at 1011. Therefore, the jobs identified by the vocational expert could not be performed by the Plaintiff under the DOT directives.

Occupational evidence provided by a vocational expert should be consistent with the occupational information provided under the DOT. The ALJ must resolve any conflict between the evidence provided by a vocational expert which is inconsistent with information in the DOT before

---

[5] Jobs at a reasoning level of "2", which include all the jobs identified by the vocational expert, exceed the limitations as posed by the ALJ's hypothetical questions, which limited the Plaintiff to work involving simple, unskilled tasks.

relying on the vocational evidence to support a decision that the individual is or is not disabled.  The ALJ must explain in the decision how  he or she resolved  the conflict between the occupational evidence provided by the VE and the DOT.  *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999).  In the instant case, the ALJ failed to address or resolve the conflict in the occupational evidence offered by the VE and the DOT.  Accordingly, the decision is unsupported by substantial evidence.   There was no vocational expert  testimony  elicited to determine the effects of the Plaintiff's mental limitations to perform the jobs identified as those performed in a low stress environment.

      **B.**      **THE ALJ ERRED IN THE CONSIDERATION OF THE STATE AGENCY OPINIONS**

The record contained the opinion of the examining state agency psychologist Henry Tenenbaum. Ph.D.  Dr. Tenenbaum  diagnosed the Plaintiff with "major depressive disorder, recurrent.  According to the Global Assessment of Functioning (GAF), the Plaintiff had a score of 50.  A score of 50 consists of what is considered "serious symptoms", (e.g. suicidal ideations, severe obsessional rituals, frequent shoplifting), or any serous impairment in social occupational or school functioning (e.g. no friends, unable to keep a job)." [Tr. 309-312]. *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition, 2000.

The record contained the opinions of the two state agency reviewing psychologists, Dr. Mendelson and Dr. Briggs.  Their opinions were that the Plaintiff was moderately limited, or impaired because she did not have the ability to maintain attention and concentration for long periods of time; and that the Plaintiff would be unable to complete a full workday or work week without having problems result  from  her  psychologically-based symptoms and be unable to keep a consistent pace without  what  would  be considered to be an unreasonable amount of time to have rest periods. [Tr. 323, 329-330].  Additionally,  Dr. Briggs  noted  the Plaintiff has moderate limitations in being able

to work within a schedule, or be able to maintain regular attendance or be punctual; and further to be able to accept instructions and respond appropriately to criticism from supervisors. [Tr. 329-330].

In his final decision the ALJ indicated that he considered the assessments of all the state agency consultants but he did not accurately reflect all limitations provided by the consultants. The opinions of state agency physicians are required to be considered as the opinions of medical experts. 20 C.F.R. Sec. 404.1527(f)(2), SSR 96-6p. Accordingly the ALJ erred in failing to include this evidence in his vocational expert testimony, or articulate specific reasons for rejection of this evidence, and in making a final determination that the Plaintiff is not disabled. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th cir. 1982); *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).

### C. THE ALJ ERRED IN EVALUATING THE PLAINTIFF'S CREDIBILITY AND FAILING TO CONSIDER THE TESTIMONY OF OTHER INDIVIDUALS

The record reflects that the Plaintiff was first observed in person by the Social Security Administration employee who helped her in completing her initial application for benefits on January 18, 2001. This person noted that the Plaintiff as an "obvious psych case - very afraid, scared emotional, and required -a lot of TLC on my part and reassurance from me and the friend who accompanied her". [Tr. 67].

The Plaintiff's longtime friend, also reported observing the Plaintiff's problems with memory and concentration, maintaining schedules, meeting deadlines, dealing with the public, and handling stressful situations. [Tr. 82-85]. This friend reiterated in a telephone contact with the Administration "she can't remember things and gets so overwhelmed when there is the slightest little change in routine."

The ALJ relied on the Plaintiff's daily activities in rejecting her subjective complaints. The Eleventh Circuit has specifically stated that it does not hold that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability..." *Lewis v. Callahan*, 125 F. 3d 1436, 1441 (11th Cir. 1997). In the decision, the ALJ maintained that the Plaintiff retained the ability to cook simple meals, do her own grocery and personal shopping, cleaning and taking care of the house as well as her personal hygiene. In reviewing the record, it reveals that the Plaintiff was "sometimes" able to prepare her own meals, while at other times "my mom helps." {Tr. 69]. The Plaintiff testified she has trouble finishing a simple job, like washing the dishes or cleaning her room, "because I can't stay organized." {Tr. 72}. The Plaintiff testified, "I don't go to see people, to the store, or church, most of the time I just don't feel up to it." [Tr.70]. Again, her friend reported: "I know sometimes 'Carrie' can't stay focused on things and her mother helps, also the medicine she takes often makes her real tired." [Tr. 88] Also, "she will start to clean and if the phone rings, she will forget maybe what she was doing or something and she will start doing things and then she will just give completely out."

The medical records in this case show a long history of medical treatment for bipolar disorder and other symptoms associated with mental issues. The Plaintiff's longstanding history of treatment for over 20 years also lends support as to her testimony regarding her limitations. SSR-7p.

**IV.   CONCLUSION**

In the instant case, the ALJ failed to follow the proper procedures as set forth in the Regulations and case law by:

1. Improperly evaluating the severity of her mental impairments;

2. Improperly evaluating her capacity for the full range of physical work activity up to and including heavy, unskilled work;

3. Improperly discrediting and failing to properly consider her testimony of other individuals in evaluating her limitations.

Remand to the Commissioner for further fact-finding is unnecessary because all of the essential evidence was before the "Appeals Council when it denied review, and the evidence establishes without any doubt that the Plaintiff was disabled". *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

For the reasons stated above, the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner for determination of the payments allowable by statute and regulation.

**DONE and ORDERED** in Chambers at Fort Myers, Florida, this 31st day of March, 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record.